UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 13 C 6625 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MARIA FERRARI, JUAN SALGADO, ROBERT FERRARI, and 2425 W. CORTLAND PROPERTIES, INC., | ) ) ) ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**M<span style="font-variant:small-caps">EMORANDUM</span> O<span style="font-variant:small-caps">PINION AND</span> O<span style="font-variant:small-caps">RDER</span>**

FirstMerit Bank, N.A., brought this suit for mortgage foreclosure and breach of promissory note against Maria Ferrari, Juan Salgado, Robert Ferrari, and 2425 W. Cortland Properties, Inc. ("Cortland Properties"), a corporation of which Robert and Maria are officers. Doc. 1. Defendants answered and counterclaimed, alleging violations of 42 U.S.C. § 1981 and the Equal Credit Opportunities Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. Doc. 41. FirstMerit has moved to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). Doc. 45. The motion is granted in part and denied in part.

**Background**

In resolving the motion to dismiss, the court assumes the truth of the counterclaims' factual allegations, though not their legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the [counterclaims], documents that are critical to the [counterclaims] and referred to in [them], and information that is subject to proper judicial notice," along with additional facts set forth in Defendants' brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City*

1

*of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Defendants as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

This suit arises out of a promissory note executed by Cortland Properties in favor of Midwest Bank and Trust Company on April 30, 2010. Doc. 1 at ¶ 8; Doc. 1-1 at 1-4. The note is secured by personal guarantees from Robert and Maria, and also by a mortgage signed by Maria and Salgado on property located in Lombard, Illinois ("Lombard property"). Doc. 1 at ¶ 10; Doc. 1-1 at 16-28; Doc. 1-2 at 1-10. When regulators closed Midwest Bank and Trust, FirstMerit obtained the note pursuant to a purchase and assumption agreement with the Federal Deposit Insurance Corporation ("FDIC"). Doc. 1 at ¶ 11.

Cortland Properties failed to make timely payments on the note when it came due in June 2012. On June 5, 2012, FirstMerit entered into a forbearance agreement with Cortland Properties, Robert, and Maria to extend the note's maturity date by one year. *Id.* at ¶ 9; Doc. 1-1 at 6-14. At the end of the extended period, Cortland Properties again failed to make the required payments. Doc. 1 at ¶¶ 13-16. FirstMerit then brought this suit to foreclose on the Lombard property, *id.* at ¶¶ 17-19, and to hold Robert and Maria Ferrari liable for breaching their guarantees, *id.* at ¶¶ 20-35.

Defendants' counterclaims allege the following. Between December 2013 and February 2014, FirstMerit and Defendants engaged in settlement discussions concerning the Cortland Properties debt. Doc. 41 at p. 11, ¶ 10. The parties agreed that Robert would give FirstMerit the proceeds from the sale of condominium units that were the subject of another mortgage dispute, and that in return FirstMerit would release Defendants from any liability under the note, mortgage, and the two personal guarantees. *Ibid*. FirstMerit, however, refused to consummate the settlement because Salgado, one of the mortgagors, is Hispanic. *Id.* at pp. 12-13, ¶¶ 11, 17,

25. To support their submission that FirstMerit's decision was based on Salgado's race, Defendants allege that on April 5, 2012, a FirstMerit loan officer told a Hispanic business partner of Robert's: "We normally don't give loans to Hispanics." *Id.* at p. 11, ¶ 9.

Defendants claim that FirstMerit's conduct violates the ECOA, which makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of race," 15 U.S.C. § 1691(a)(1), and 42 U.S.C. § 1981(a), which gives to "all persons within the jurisdiction of the United States … the same right … to make and enforce contracts." Doc. 41 at pp. 12-13, ¶¶ 12-27.

## Discussion

To survive a Rule 12(b)(6) motion, a complaint "must contain 'enough facts to state a claim to relief that is plausible on its face' and also must state sufficient facts to raise a plaintiff's right to relief above the speculative level." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ibid.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Seventh Circuit has made clear that neither *Twombly* nor *Iqbal* "cast doubt on the validity of Rule 8 of the Federal Rules of Civil Procedure," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010), which provides in relevant part that "[a] pleading that states a claim for relief must contain … a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Exactly what "a short and plain statement" must contain to clear the plausibility threshold varies from case to case. As the Seventh Circuit explained in *Swanson*, "[a] more complex case involving financial derivatives … or antitrust violations will require more detail, both to give the

3

opposing party notice of what the case is all about and to show how, in the plaintiff's mind at least, the dots should be connected." 614 F.3d at 405. In more "straightforward" case involving discrimination, by contrast, "[a] plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else. That is an entirely plausible scenario, whether or not it describes what 'really' went on in this plaintiff's case." *Id.* at 404-05.

This case falls squarely on the "straightforward" side of the line. Defendants allege that they engaged in settlement discussions with FirstMerit; that they reached a basic settlement agreement; and that FirstMerit refused to consummate the settlement because Salgado is Hispanic. Defendants buttress their claim with an allegation that a FirstMerit loan officer made a biased comment to Robert's business partner about doing business with Hispanics. As in *Swanson*, Defendants' claim presents a plausible scenario and thus is sufficient to survive dismissal, even though it may not accurately describe what actually occurred. *Swanson* is a Fair Housing Act case, but there is no reason why a simple discrimination claim under the ECOA or § 1981 (or any other statute prohibiting discrimination) should treated differently for pleading purposes than one under the FHA. *See Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) ("A complaint alleging sex discrimination under Title VII need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex.") (internal quotation marks omitted); *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (same). Accordingly, the fact that FirstMerit might have other, plausible justifications for not entering into a settlement agreement does not on its own defeat Defendants' counterclaims at the Rule 12(b)(6) stage.

4

During briefing on this motion, another judge in this District dismissed materially identical counterclaims in *FirstMerit Bank, N.A. v. Stave Properties, Inc.*, \_\_ F. Supp. 2d \_\_, 2014 WL 3339563 (N.D. Ill. July 9, 2014). That case involved a promissory note issued by Stave Properties and secured by personal guarantees and mortgages from Robert Ferrari (the same Robert Ferrari in this case) and his business partner (the same business partner who was allegedly told by a FirstMerit loan officer that FirstMerit did not give loans to Hispanics). Like Defendants here, Ferrari and his partner counterclaimed under the ECOA and § 1981, alleging that FirstMerit failed to consummate a settlement due to bias against Hispanics—bias confirmed by the loan officer's racial remark. *Id.* at *1. *Stave Properties* dismissed the counterclaims under *Twombly* and *Iqbal*. *Id.* at *2. FirstMerit asks for the same result here. Doc. 54 at 2. The court declines the request due to its respectful disagreement with *Stave Properties*.

*Stave Properties* began by chiding the defendants there for "ignor[ing]" the fact that, as in this case, FirstMerit granted the defendants a forbearance in June 2012, two months after the loan officer's racial remark in April 2012. 2014 WL 3339563 at *1. This court agrees that a factfinder might conclude that because FirstMerit agreed to give Defendants favorable treatment in June 2012, the loan officer might not really have said (or perhaps meant) what Defendants allege the officer said in April 2012. More to the point, a factfinder might conclude that because FirstMerit was willing to cut Defendants a break in 2012, it is unlikely that FirstMerit scuttled the settlement process on account of Salgado's race in 2014. But these are just permissible inferences that a *jury* may draw, not inferences that the *court* must or even may draw at the pleading stage. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 709 (7th Cir. 2013) ("The 'common actor' or 'same actor' inference is a reasonable inference that may be argued to the jury, but it is not a conclusive presumption that applies as a matter of law.").

5

*Stave Properties* next suggested that the defendants waived their counterclaims by signing the forbearance agreement, which included a provision stating that the defendants "waive[d] and affirmatively agree[d] not to allege or otherwise pursue any … counterclaims … that they may have … to contest … the conduct of [FirstMerit] in administering the financing arrangements by and between [defendants] and [FirstMerit]." 2014 WL 3339563 at *1 (alterations in original). The forbearance agreement in this case contains an identical waiver provision. Doc. 1-1 at 8. Yet the waiver is narrow; Defendants here consented only to "release, waive and affirmatively agree not to allege or otherwise pursue any defenses, affirmative defenses, counterclaims, claims, causes of action, setoffs or other rights that they may have, *as of the date hereof* …." *Ibid.* (emphasis added). Defendants here signed the forbearance agreement in June 2013; their ECOA and § 1981 claims did not arise until February 2014, when FirstMerit allegedly scuttled the agreed-upon settlement, and thus fall outside the waiver's scope.

*Stave Properties* also emphasized the Seventh Circuit's holding in *Perez v. Thorntons*, *supra*, that "[i]solated comments that are no more than stray remarks in the workplace are insufficient to establish that a particular decision was motivated by discriminatory animus." 2014 WL 3339563 at *2. As Defendants correctly note, *Perez* applied the Rule 56 summary judgment standard, not the Rule 12(b)(6) pleading standard. The Rule 12(b)(6) standard provides that a party need not allege the same facts it would need to create a genuine issue of material fact for summary judgment purposes. *See Carlson*, 758 F.3d at 827 (in reversing the district court's Rule 12(b)(6) dismissal of certain claims, explaining: "In rejecting all but two of Carlson's claims for failing to state a plausible claim for relief, the district court applied the wrong standard. The court repeatedly faulted her for not providing 'evidence' in support of her claims, though of course evidence is not required at the pleading stage. And the court relied on

6

summary judgment decisions that addressed not the content of complaints but the evidence needed to take a claim to a jury. The judicial pen may sometimes slip inadvertently in these ways, but in this case the slips signaled accurately that the court had applied too demanding a standard.") (citations omitted); *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084-85 (7th Cir. 2008) ("To survive dismissal at this stage, the complaint need not state the respects in which the defendant was alleged to be negligent …, although such specificity certainly would be required at the summary judgment stage."). To the contrary, in straightforward discrimination cases like this one, "the complaint merely needs to give the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Luevano*, 722 F.3d at 1028.

Finally, *Stave Properties* faulted the defendants there for alleging the bank's racial motivation only on "information and belief." 2014 WL 3339563 at *1 n.3. Defendants here also plead "on information and belief" that "FirstMerit refused to consummate the settlement because Salgado is Hispanic." Doc. 41 at pp. 12-13, ¶¶ 17, 25. It is true that allegations based solely on information and belief may not satisfy the more demanding standard for pleading fraud under Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-47 (7th Cir. 2011). But Defendants are not alleging fraud or mistake on the part of the bank; they are alleging discrimination, which is governed by Rule 8(a). *Cf. Swanson*, 614 F.3d at 405-06 (distinguishing between Fair Housing Act claims and fraud claims for pleading purposes). And under Rule 8(a), a party alleging matters peculiarly within another party's knowledge may plead those matters on "information and belief." *See Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("[A]bsent an event offering definitive insight into the facility officials' minds … Brown cannot be faulted for not pleading on the basis of personal knowledge. What the defendants knew of the risk posed by G.B. and when they knew of it is a matter peculiarly

7

reserved to their memories and files. Accordingly, Brown properly averred on the basis 'information and belief.'"); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) ("The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant."); *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (Sotomayor, J.) (same in a straightforward lending discrimination case); 5 Wright & Miller, *Federal Practice & Procedure* § 1224, at 300 & n. 7 (3d ed. 2004) ("Pleading on information and belief is a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff."). Given that FirstMerit's motivation is a matter within FirstMerit's knowledge, at this stage Defendants may allege FirstMerit's discriminatory motivation on information and belief.

In addition to seeking dismissal under *Twombly* and *Iqbal*, FirstMerit contends that Defendants' allegations do not sufficiently plead the requisites of an ECOA claim. As pertinent here, the ECOA makes it unlawful for a creditor to "discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of race." 15 U.S.C. § 1691(a)(1). FirstMerit argues that the unconsummated settlement agreement was not a "credit transaction" because it would not have resulted in the deferral of a debt. *See Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir. 2005) ("deferral of a debt [is] the requirement for a transaction to be a credit transaction under the [ECOA]"). But under the statute's plain terms, the settlement agreement need not *itself* be a credit transaction so long as it is an "*aspect* of a credit transaction." 15 U.S.C. § 1691(a)(1) (emphasis added). FirstMerit does not dispute that the promissory note is an extension of credit and therefore a credit transaction. And because the settlement discussions concerned the terms of that existing credit transaction, the

8

unconsummated settlement agreement is an aspect of a credit transaction and thus falls within the ECOA's scope. *See Zahabi v. Bank of Am., N.A.*, 2013 WL 1632666, at *3 (N.D. Cal. Apr. 16, 2013) ("[t]he foreclosure process is certainly an 'aspect' of a credit transaction, as it is a consequence of the borrower failing to meet the terms of the agreement"); *Hamilton v. O'Connor Chevrolet, Inc.*, 2004 WL 1403711, at *7-8 (N.D. Ill. June 23, 2004) (allowing an ECOA claim to proceed where the plaintiff alleged that a car dealership, because of her race, quoted her a lower trade-in price in exchange for forgiving her car loan); 12 C.F.R. § 202.2(m) (defining "credit transaction" under § 1691(a)(1) to mean "every aspect of an applicant's dealings with a creditor regarding an application for credit *or an existing extension of credit* (including, but not limited to, … terms of credit; … [and] alteration … of credit") (emphasis added).

FirstMerit also argues that Defendants are not "applicants" within the meaning of § 1691(a)(1). The ECOA defines "applicant" as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." 15 U.S.C. § 1691a(b). The regulations further define "applicant" to mean "any person who requests or who has received an extension of credit from a creditor, and includes any person *who is or may become contractually liable* regarding an extension of credit." 12 C.F.R. § 202.2(e) (emphasis added). Cortland Properties qualifies as an "applicant" because it is primarily liable on the promissory note. And because they may become secondarily liable regarding FirstMerit's extension of credit to Cortland Properties, Doc. 1 at 2 (where FirstMerit's complaint alleges that "Juan Salgado is in default under the Mortgage, Maria Ferrari is in default under the Mortgage and Maria Guaranty, and Robert Ferrari is in default under the Robert Guaranty"), Robert, Maria, and Salgado qualify as applicants as well.

9

The court recognizes that *Moran Foods, Inc. v. Mid-Atlantic Mkt. Dev. Co., LLC*, 476 F.3d 436 (7th Cir. 2007), expressed "doubt" that § 202.2(e) validly interprets the ECOA. *Id*. at 441. But four years later, in *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529 (7th Cir. 2011), the Seventh Circuit validated § 202.2(e)'s definition of "applicant." The plaintiff in *Davis* argued that she became an ECOA "applicant" when the defendants offered her a loan modification, allegedly on racially discriminatory terms. *Id.* at 538. The Seventh Circuit agreed, holding that the plaintiff, "as the recipient of the defendants' offer to modify her loan, 'received an extension of credit' and thus became an 'applicant' under 12 C.F.R. § 202.2(e)." *Ibid.* The court could not have concluded that the plaintiff was in fact an "applicant" under the ECOA without accepting § 202.2(e) as an authoritative interpretation of that statutory term. As for *Moran Foods*, *Davis* indicated that its discussion of the term "applicant" was dicta. *See ibid.* (holding that *Moran Foods* "f[ound] no need to resolve the threshold issue of whether a plaintiff was an 'applicant' under the ECOA because plaintiff failed to submit sufficient evidence of discrimination under the ECOA to survive summary judgment"). In any event, FirstMerit does not argue that Robert and Maria, because they are mere guarantors, cannot be applicants under the ECOA; it therefore forfeited any such argument, at least for purposes of its Rule 12(b)(6) motion. *See G & S Holdings LLC v. Cont'l Casualty Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted).

FirstMerit also argues that Defendants do not have "standing" to bring a § 1981 claim. Section 1981 "prohibits race discrimination in the making and forming of contracts," *Smiley v. Columbia College Chicago*, 714 F.3d 998, 1002 (7th Cir. 2013), by giving all persons within the

10

jurisdiction of the United States an equal right "to make and enforce contracts." 42 U.S.C. § 1981(a). That right includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

FirstMerit contends that Cortland Properties, Robert, and Maria have no "standing" under § 1981 because they themselves were not the target of racial discrimination. Doc. 45 at 6-7. (Scare quotes are placed around "standing" because, as explained in *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), whether a particular statute allows a particular plaintiff to seek redress thereunder is a matter of statutory interpretation, not standing. *See Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723, 733-34 (7th Cir. 2014); *In re C.P. Hall Co.*, 750 F.3d 659, 660-61 (7th Cir. 2014).) In response, Defendants say absolutely nothing; they argue only that *Salgado* has "standing" under § 1981. Doc. 53 at 7-8. Defendants thus have forfeited any argument they might have had to support the ability of Cortland Properties, Robert, and Maria to pursue the § 1981 claim. *See G & S Holdings*, 697 F.3d at 538.

As for Salgado, FirstMerit concedes that the § 1981 counterclaim alleges that FirstMerit was prejudiced against him. FirstMerit argues, however, that because Salgado would not have been a party to the proposed settlement agreement, he has no § 1981 claim under *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006), which holds that "[a]ny claim brought under §1981 … must initially identify an impaired contractual relationship under which the plaintiff has rights." *Id*. at 476. Although Salgado did not sign the June 2012 forbearance agreement, Doc. 1-1 at 14, the counterclaims allege that he would have been a party to the 2014 settlement agreement. Specifically, Defendants allege that FirstMerit initially "agreed to release *Defendants* from all claims and liabilities relating to the Note and Mortgage before refusing to

11

consummate the settlement." Doc. 41 at p. 11, ¶ 10 (emphasis added). Salgado is among the Defendants, he co-signed the mortgage, and he allegedly is liable to FirstMerit for Cortland Properties' default on the note. Given this allegation, it is plausible that Salgado would have been a party to the settlement agreement, which means that he has a viable § 1981 claim. *See McDonald*, 546 U.S. at 476 ("[Section] 1981 protects the would-be contractor along with those who already have made contracts.").

## Conclusion

For the foregoing reasons, FirstMerit's motion to dismiss Defendants' counterclaims is granted in part and denied in part. The § 1981 counterclaims by Cortland Properties, Maria, and Robert are dismissed; the dismissal is with prejudice because Defendants abandoned those particular counterclaims. *See Baker v. Chisom*, 501 F.3d 920, 926 (8th Cir. 2007); *Thomas v. Urban Partnership Bank*, 2013 WL 1788522, at *13 (N.D. Ill. Apr. 26, 2013); *Simkus v. United Air Lines, Inc.*, 2012 WL 3133603, at *6 (N.D. Ill. July 31, 2012). FirstMerit shall answer the surviving counterclaims by November 6, 2014.

October 16, 2014

United States District Judge