UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 13 C 6625 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MARIA FERRARI, JUAN SALGADO, ROBERT FERRARI, and 2425 W CORTLAND PROPERTIES, INC., | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

**MEMORANDUM OPINION AND ORDER**

FirstMerit Bank, N.A., brought this suit for mortgage foreclosure and breach of a promissory note against Maria Ferrari, Juan Salgado, Robert Ferrari, and 2425 W Cortland Properties, Inc. ("Cortland Properties"). Doc. 1. Defendants answered and counterclaimed, alleging violations of 42 U.S.C. § 1981 and the Equal Credit Opportunities Act, 15 U.S.C. § 1691 *et seq*. Doc. 41. The court denied FirstMerit's motion to dismiss the counterclaims. Docs. 65-66 (reported at __ F. Supp. 3d __, 2014 WL 5293441 (Oct. 16, 2014)). Now before the court is Defendants' motion to enforce what they assert is the parties' settlement agreement. Doc. 72.

In June 2013, Cortland Properties defaulted on a note held by FirstMerit and secured by guarantees and a mortgage from the individual defendants. The parties began talks to settle the debt shortly after FirstMerit filed this suit in September 2013. In November 2013, David Standa, FirstMerit's counsel, emailed a draft settlement agreement to Michael Pomerantz, Defendants' counsel. Doc. 72-2 at 2. Standa wrote that the draft was "still subject to client approval," but he asked Pomerantz to "take a look and let me know if everything looks alright." *Ibid*. On

1

December 3, 2013, Pomerantz replied with some changes, noting that his draft too "remains subject to my clients' review and approval." *Id*. at 8. Ten days later, Standa sent back a new proposal, noting that "[w]e're close here, but not quite there." *Ibid*.

The parties continued to discuss terms over the next month. On January 28, 2014, Pomerantz emailed Standa asking for a revised agreement. *Id*. at 12. On January 29, Standa responded, "My client is working on getting the approval for the deal. Once it is approved, I'll draft the documents." *Id*. at 12. On February 3, Standa emailed Pomerantz with a "draft agreement." Doc. 78-1 at 5; *id*. at 6-14 (the draft agreement). The email stated: "The draft agreement is attached. We're also going to need an escrow agreement, but we'll cross that bridge once we've finalized the details of the settlement agreement. This is still subject to my client's review and approval." *Id*. at 5.

Settlement agreements are contracts and are interpreted according to the law of the jurisdiction where the contract was (purportedly) created—here, Illinois. *See In re Motorola Sec. Litig.*, 644 F.3d 511, 517 (7th Cir. 2011); *Newkirk v. Vill. of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). As with any contract, there must be an offer to settle, an acceptance of the offer, and a meeting of the minds. *See Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 507 (7th Cir. 2007); *Kim v. Alvey, Inc.*, 749 N.E.2d 368, 378 (Ill. App. 2001). "Whether the parties had a 'meeting of the minds' is determined not by their actual subjective intent, but by what they expressed to each other in their writings. Thus, the parties decide for themselves whether the results of preliminary negotiations bind them, and they do so through their words." *Abbott Labs. v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999).

Defendants contend that because Standa "did exactly as promised [on February 3] and forwarded the Enforceable Settlement Agreement, as he indicated he would after his client

2

approved the proposed deal[,] … this matter has been settled pursuant to well-founded Illinois law." Doc. 72 at ¶¶ 5-6. That contention is wrong for two separate and independent reasons: first, Standa's February 3 email was not a binding offer; and second, even if that email were such an offer, Defendants did not accept it and, in fact, rejected it.

With respect to whether there was an offer, although Standa said on January 29 that he would forward a settlement agreement after FirstMerit approved it, his February 3 email clearly stated that such approval had not yet been obtained. Doc. 78-1 at 5 ("This is still subject to my client's review and approval."). In addition, Standa's email expressed the need to "finalize the details" of what he called the parties' "draft agreement." All this objectively indicates that the email was part of preliminary negotiations rather than a binding offer. *See PFT Roberson, Inc. v. Volvo Trucks N. Am., Inc.*, 420 F.3d 728, 732 (7th Cir. 2005) ("Volvo protected itself by stating in the email that many 'required details' remained to be 'finalize[d]'; if the details were 'required,' there was no agreement without them."); *Empro Mfg. Co. v. Ball-Co Mfg., Inc.*, 870 F.2d 423, 425 (7th Cir. 1989) (explaining that a party "insulated" its preliminary negotiations "from binding effect by listing, among the conditions to which the deal was 'subject,' the 'approval of the shareholders and board of directors'"); *Leavell v. Dep't of Natural Res.*, 923 N.E.2d 829, 841 (Ill. App. 2010) ("In the present case, the communications between the parties were preliminary communications about a 'proposed' settlement, and no definite and certain agreement was ever entered into between the parties.").

In any event, even if Standa's February 3 email was a binding offer, offers alone do not create contracts. They must be accepted, and Defendants do not and could not plausibly claim to have accepted the terms Standa presented on February 3. That is because on February 4, the very next day, Pomerantz sent Standa this reply:

3

> Please see my initial comments attached. Given a few of the major discrepancies indicated (like $250,000 v. the $200,000 agreed), I have not yet reviewed the same with my clients, and the same remains subject to my client's review and approval. Please call me once you have had an opportunity to review the attached.

Doc. 78-1 at 16. Pomerantz's comments on Standa's draft included: (1) reducing Defendants' settlement payment from $250,000 to $200,000; (2) deleting a provision allowing FirstMerit to reinstate this lawsuit if it turned out that Defendants had falsely represented that they were unable to satisfy the entire indebtedness; (3) requiring FirstMerit to release Defendants from their mortgage obligations before, not after, they paid the settlement amount. *Id*. at 21.

It is disquieting that Defendants' motion to enforce did not attach, or even acknowledge the existence of, Pomerantz's February 4 email—and this despite the fact that Pomerantz submitted a declaration averring that the motion attached "[t]rue and correct" copies of his and Standa's settlement emails "[d]uring the winter of 2013-2014." Doc. 72-1 at ¶ 4. Due to Defendants' omission, FirstMerit had to attach Pomerantz's February 4 email to its brief. Doc. 78-1 at 16-25. Still more disquieting is that Defendants did not acknowledge or address the February 4 email in their reply brief; they just pretended that it did not exist. Doc. 84. The Seventh Circuit has rebuked lawyers for the "ostrich-like tactic of pretending that potentially dispositive authority against a litigant's contention does not exist." *Hill v. Norfolk & Western Ry. Co.*, 814 F.2d 1192, 1198 (7th Cir. 1987); *see also Bovee v. Broom*, 732 F.3d 743, 745 (7th Cir. 2013) ("The belief that ostriches stick their heads in the sand to avoid seeing danger is a canard. Lawyers shouldn't do it either."). A lawyer pretending that a potentially dispositive fact does not exist is no better—particularly when the fact consists of an email drafted and sent by the lawyer himself.

And the February 4 email *is* dispositive. "To be valid, an acceptance must be objectively manifested, for otherwise no meeting of the minds would occur." *Energy Erectors, Ltd. v. Indus.*

*Comm'n*, 595 N.E.2d 641, 644 (Ill. App. 1992); *see also Echo, Inc. v. Whitson Co.*, 121 F.3d 1099, 1103 (7th Cir. 1997); *Rosin v. First Bank of Oak Park*, 466 N.E.2d 1245, 1249 (Ill. App. 1984). Yet Pomerantz did not manifest any objective intent to accept Standa's February 3 offer (if in fact it was a binding offer). Pomerantz's own clients, he explained, had not had yet reviewed Standa's draft, and he would not take final action without their approval. Doc. 78-1 at 16. Furthermore, although Defendants now claim that the parties agreed on the material terms of the settlement on February 3, Pomerantz's "initial comments" on February 4 identified several "major discrepancies" that needed to be addressed, *ibid.*—including the amount Defendants were to pay ($200,000 vs. $250,000), the timing of the release that Defendants would obtain in exchange for their payment, and whether FirstMerit would be permitted to reinstate this suit should it later appear that Defendants had misrepresented their financial condition. *Id.* at 21. These are hardly words of objective assent; as the Seventh Circuit has observed, even the statement that "the 'terms and conditions are generally acceptable' but that 'some clarifications are needed' … is an ominous noise in a negotiation." *Empro Mfg.*, 870 F.2d at 426. More to the point, the terms to which Pomerantz objected were plainly material, which necessarily means that no contract was formed. *See Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001) ("we think many defendants would agree that the *most* material term in any settlement agreement is the release"); *Abbott Labs.*, 164 F.3d at 388 (holding that "details of the release provisions … in settlement agreements are inherently material"); *Flood v. Ty, Inc.*, 2005 WL 994579, at *11 (N.D. Ill. Apr. 5, 2005) (holding that settlement amount, mutual releases, and agreement to dismiss the plaintiff's case "were the essential and material terms of the settlement agreement").

Illinois law holds that "an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by

5

the original offeror before a valid contact is formed." *Finnin v. Bob Lindsay, Inc.*, 852 N.E.2d 446, 448 (Ill. App. 2006); *see also Dresser Indus., Inc. v. Pyrrhus AG*, 936 F.2d 921, 926 (7th Cir. 1991) ("Illinois courts have consistently held that accepting an offer by requesting modification of the terms constitutes a rejection of the original offer and a counter-offer."); *Hubble v. O'Connor*, 684 N.E.2d 816, 821 (Ill. App. 1997); *Sementa v. Tylman*, 595 N.E.2d 688, 692 (Ill. App. 1992); *Restatement (Second) of Contracts* § 39(2) (noting that an "offeree's power of acceptance is terminated by his making of a counter-offer"). Accordingly, once Pomerantz sent his February 4 revisions, Standa's February 3 offer (again, assuming it was a binding offer) was rejected, leaving it dead in the water. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 432 (7th Cir. 1993) ("Because Illinois law demands that an acceptance comply strictly with the terms of the offer … Venture's modifications of Zenith's proposed agreements, however minor, precluded formation of a contract at that point … [and] created a counteroffer which Zenith never accepted.") (internal quotation marks omitted). And as Defendants do not maintain that either FirstMerit or Standa accepted Pomerantz's counteroffer, it follows that no enforceable agreement was reached.

Defendants are correct that "[t]here is no requirement that an agreement be 'signed, sealed, and delivered' to be binding and Illinois courts have not been shy about enforcing promises made in the context of ongoing negotiations and often involving preliminary or incomplete agreements." Doc. 72 at ¶ 8 (quoting *Seymour v. Hug*, 413 F. Supp. 2d 910, 925 (N.D. Ill. 2005)). But before it can be enforceable, a promise made in ongoing negotiations must be just that—a promise. In *Seymour*, plaintiff's counsel emailed defense counsel to state that the plaintiff "ha[d] *accepted*" the defendants' proposed settlement framework and that she was "prepared to report to [the judge] … that we have settled this case in principle." 413 F. Supp. 2d

6

at 916-17. No such settlement, even in principle, was reached in this case. Again, the Seventh Circuit has repeatedly emphasized that "the parties decide whether the results of preliminary negotiations bind them, and they do so through their words." *Abbott Labs.*, 164 F.3d at 387; *see also Empro Mfg.*, 870 F.2d at 425. Here, those words were clear. Standa and Pomerantz's negotiations were preliminary and did not result in an enforceable agreement.

Because no enforceable agreement was reached on February 3, 2014 or at any time thereafter, Defendants' motion to enforce the (purported) settlement agreement is denied. This disposition makes it unnecessary to consider FirstMerit's alternative arguments that the motion is defeated by the Illinois Credit Agreements Act, 815 ILCS 160/3, or that the parties did not authorize their respective attorneys to settle the case at all, *see Webster v. Hartman*, 749 N.E.2d 958, 963 n.1 (Ill. 2001) ("In order to grant a motion to enforce an out-of-court settlement, this court has long held that counsel must possess express consent or authorization … [and] the burden rests with the party alleging authority to show that fact."); *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 999-1000 (7th Cir. 2001) ("where the alleged (written) settlement occurred outside of court, in the client's absence, … an attorney's authority to settle will not be presumed").

March 4, 2015

United States District Judge

7