UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRSTMERIT BANK, N.A., | ) | |
| | ) | |
| Plaintiff/Counter-Defendant, | ) | 13 C 6625 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MARIA FERRARI, JUAN SALGADO, ROBERT FERRARI, and 2425 W CORTLAND PROPERTIES, INC., | ) ) ) | |
| | ) | |
| Defendants/Counter-Plaintiffs. | ) | |

## MEMORANDUM OPINION AND ORDER

FirstMerit Bank, N.A., brought this suit for mortgage foreclosure and breach of a promissory note and guarantees against Maria Ferrari, Juan Salgado, Robert Ferrari, and 2425 W Cortland Properties, Inc., a corporation of which Robert and Maria are officers. Doc. 1. Defendants answered and counterclaimed, alleging violations of 42 U.S.C. § 1981 and the Equal Credit Opportunities Act ("ECOA"), 15 U.S.C. § 1691 *et seq*. Doc. 41. The court granted FirstMerit's motion to dismiss Maria's, Robert's, and Cortland's § 1981 counterclaims, but allowed the ECOA counterclaims and Salgado's § 1981 counterclaim to proceed. Docs. 65-66 (reported at 71 F. Supp. 3d 751 (N.D. Ill. 2014)). The court then denied Defendants' motion to enforce a purported settlement agreement. Docs. 86-87 (reported at 2015 WL 1006560 (N.D. Ill. Mar. 4, 2015)). A bench trial is set for September 22, 2015. Doc. 103.

Now before the court is FirstMerit's motion for summary judgment on its claims and the surviving counterclaims. Doc. 92. For the following reasons, the motion is granted as to liability on FirstMerit's claims, denied as to damages on those claims, granted as to the ECOA counterclaims, and denied as to Salgado's § 1981 counterclaim.

1

**Background**

The following facts are set forth as favorably to Defendants as the record and Local Rule 56.1 permit. *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012).

This suit arises out of a promissory note executed by Cortland in favor of Midwest Bank and Trust Company on April 30, 2010. Doc. 110 at ¶ 10; Doc. 1-1 at 1-4. The note is secured by personal guarantees from Robert and Maria, and also by a mortgage signed by Maria and Salgado on property located in Lombard, Illinois ("Lombard property"). Doc. 110 at ¶¶ 9-11; Doc. 1-1 at 15-28; Doc. 1-2 at 1-10. When state regulators closed Midwest Bank and Trust, FirstMerit obtained the note pursuant to a purchase and assumption agreement with the Federal Deposit Insurance Corporation. Doc. 110 at ¶ 13.

Cortland failed to make timely payments on the note when it came due in June 2012. Shortly thereafter, FirstMerit entered into a forbearance agreement with Cortland, Robert, and Maria to extend the note's maturity date by a year. *Id*. at ¶¶ 15-16; Doc. 1-1 at 5-14. At the end of this period, Cortland failed to make the required payments and defaulted. Doc. 119 at ¶ 17. Robert and Maria also failed to pay the outstanding balance, thus breaching the guarantees and triggering a default under the mortgage. *Id*. at ¶¶ 18-20. FirstMerit brought this suit to foreclose on the Lombard property and to hold Robert and Maria liable for breaching their guarantees. Doc. 1.

The counterclaims allege that between December 2013 and February 2014—after this suit was filed—FirstMerit and Defendants engaged in settlement discussions concerning the debt. Doc. 41 at p. 11, ¶ 10. No settlement was reached. Doc. 119 at ¶ 31. Defendants allege

that the settlement fell through because FirstMerit discriminated against Salgado on account of his being Hispanic. Doc. 41 at pp. 12-13, ¶¶ 17, 25. To support this submission, the counterclaims allege that in April 2012, a FirstMerit loan officer told Robert's business partner: "We normally don't give loans to Hispanics." *Id.* at p. 11, ¶ 9.

## Discussion

I.  **Defendants' ECOA Counterclaims**

The ECOA makes it "unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction … on the basis of race." 15 U.S.C. § 1691(a)(1). FirstMerit contends that Cortland, Robert, and Maria cannot invoke the statute because they are not members of a protected class, and also that Robert and Maria, as mere guarantors, are not "applicants." First Merit acknowledges that Salgado is a member of a protected class, but argues that he is not an "applicant" because he never applied for or was denied credit. Doc. 92 at 7-8. Defendants answer these arguments with silence.

True enough, the court denied FirstMerit's motion to dismiss the ECOA counterclaims on similar grounds. 71 F. Supp. 3d at 757-59. In particular, the court held that, on the pleadings, Defendants were "applicants" and that FirstMerit had forfeited, "for purposes of [the] Rule 12(b)(6) motion," any argument that mere guarantors did not qualify as "applicants." *Id.* at 759. But just as FirstMerit's previous failure to raise that argument constituted forfeiture, Defendants' present failure in their summary judgment response even to mention, let alone substantively address, FirstMerit's ECOA arguments constitutes forfeiture as well. Because Defendants have not even attempted to defend their ECOA counterclaims, summary judgment is appropriate. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's

3

motion for summary judgment."); *Domka v. Portage Cnty.*, 523 F.3d 776, 783 (7th Cir. 2008) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.") (internal quotation marks omitted); *Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Nextel specifically requested summary judgment on the quantum meruit claim. Keck Garrett, however, did not defend that claim in its reply to Nextel's motion for summary judgment. By failing to present its argument to the district court, Keck Garrett abandoned its claim."); *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 407 (7th Cir. 2007) ("We agree with the district court's determination that [the plaintiff] waived (forfeited would be the better term) his discrimination claim by devoting only a skeletal argument in response to [the defendant's] motion for summary judgment."), *aff'd on other grounds*, 553 U.S. 442 (2008).

## II. Salgado's § 1981 Counterclaim

Salgado's § 1981 counterclaim alleges that FirstMerit refused to enter into a settlement because he is Hispanic. FirstMerit seeks summary judgment on the ground that no settlement agreement was reached. Doc. 92 at 6. FirstMerit is right that no settlement was reached, 2015 WL 1006560 at *3-4, but the point is irrelevant, for as the court has noted, "§ 1981 protects the would-be contractor along with those who already have made contracts," 71 F. Supp. 3d at 760 (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). Salgado's complaint is that FirstMerit would not enter into a settlement agreement because of his ethnicity, and so the parties' failure to reach an agreement helps rather than hinders his § 1981 counterclaim. Doc. 41 at p. 13 ¶ 25 ("FirstMerit *refused to consummate* the settlement because Salgado is Hispanic") (emphasis added).

FirstMerit's only other argument for summary judgment is equally meritless. FirstMerit contends that the § 1981 counterclaim fails because it had no idea prior to the counterclaim's filing that Salgado—*Juan* Salgado—was Hispanic. Doc. 92 at 6. While FirstMerit may not have known with *certainty* that Salgado was Hispanic, it had to have been pretty sure—or so a reasonable factfinder could conclude. *See* David L. Word & R. Colby Perkins Jr., *Building a Spanish Surname List for the 1990's—A New Approach to an Old Problem* Tbl. 5 & App. Tbl. A (Population Div., U.S. Census Bureau, Technical Working Paper No. 13, Mar. 1996), www.census.gov/population/documentation/twpno13.pdf (reporting that "Salgado" is the 184th most frequently occurring "heavily Hispanic" surname, with "heavily Hispanic" meaning that over seventy-five percent of people with that surname identify as Hispanic); https://en.wikipedia.org/wiki/Juan ("Juan is a given name, the Spanish language and Manx language version of John. It is very common in the Isle of Man and in Spain (its origin) and in Spanish-speaking communities around the world."). Accordingly, what FirstMerit knew about Salgado's ethnicity during the settlement negotiations is matter of disputed fact that cannot be resolved on summary judgment. FirstMerit presents no other grounds for summary judgment on Salgado's § 1981 counterclaim, so its motion is denied as to that counterclaim.

### III. FirstMerit's Claims

That leaves FirstMerit's claims against Defendants for foreclosure and breach of the promissory note and guarantees. Defendants concede that they breached the note, guarantees, mortgage, and forbearance agreement. Doc. 119 at ¶¶ 17-20. They argue only that FirstMerit has not adequately established its damages. Specifically, Defendants assert that FirstMerit may not recover a $7,047.94 late fee, that FirstMerit's requested attorney fees are not reasonable (the note and guarantees contain a fee-shifting provision), and that FirstMerit has not laid a proper

foundation for certain business records purporting to establish the amounts due under the note. Doc. 109 at 3-10, 13-15. FirstMerit has agreed to waive the late fee, Doc. 116 at 6-7, but contends that its attorney fees are reasonable (with one small exception) and that the business records are admissible. *Id*. at 3-6. Because this is a bench trial, because Salgado's § 1981 counterclaim is proceeding regardless, and because resolution of that counterclaim may ultimately affect the damages available to FirstMerit, the court in the interest of judicial efficiency will reserve those issues for trial. *Id*. at 3 (where FirstMerit argues that, "even if the affidavits were improper, at a minimum summary judgment should be entered … and FirstMerit should be permitted to return at a later date to prove up the amount of damages"). FirstMerit should be sure at trial to pay close attention to the requirements of Federal Rule of Evidence 803(6) and, if applicable, Federal Rule of Evidence 1006. *See NRRM, LLC v. Mepco Fin. Corp.*, 2015 WL 1859851, at *2-3 (N.D. Ill. Apr. 21, 2015); *NRRM, LLC v. Mepco Fin. Corp.*, 2015 WL 1501897, at *10-11 (N.D. Ill. Mar. 27, 2015); *NRRM, LLC v. Mepco Fin. Corp.*, 2013 WL 4537391, at *4-5 (N.D. Ill. Aug. 27, 2013).

## Conclusion

For the foregoing reasons, FirstMerit's summary judgment motion is granted as to Defendants' ECOA counterclaims, denied as to Salgado's § 1981 counterclaim, granted as to liability on FirstMerit's claims, and denied as to damages on those claims. The case shall proceed to trial on Salgado's § 1981 counterclaim and FirstMerit's damages.

August 18, 2015

United States District Judge

6