IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FIRSTMERIT BANK, N.A., a national banking association, as successor in interest to the FDIC, as receiver for Midwest Bank and Trust Company, | ) ) ) ) ) ) |
| Plaintiff, | ) Case No. 13-CV-6625 |
| vs. | ) ) The Honorable Gary Feinerman ) |
| MARIA FERRARI; JUAN SALGADO; ROBERT FERRARI; 2425 W. CORTLAND PROPERTIES, INC. | ) ) ) ) |
| Defendants. | ) ) |

**PLAINTIFF'S RULE 11 MOTION FOR SANCTIONS AGAINST
COUNTERPLAINTIFF JUAN SALGADO AND HIS COUNSEL**

FirstMerit Bank, N.A., respectfully moves under Federal Rule of Civil Procedure 11 for sanctions against Defendant Juan Salgado and his counsel, Michael Pomerantz, Andy Jacobson, Glenn Kanter, Bryan King and their firm Brown, Udell, Pomerantz & Delrahim. Salgado and his counsel filed and advocated a counterclaim sounding in racial discrimination that violated Rule 11(b)(1) & (3) because it was presented for the improper purposes of harassment and delay, needlessly and substantially increased the cost of litigation, and it was knowingly based on a factual contention that lacked any evidentiary support. FirstMerit has been prejudiced by the conduct of Salgado and his counsel and seeks appropriate relief under Rule 11.

### INTRODUCTION

FirstMerit seeks sanctions against Salgado and his counsel for asserting claims of racial discrimination for improper purposes and based on a factual allegation that they knew to be untruthful. Defendants' counterclaims, which were filed on April 18, 2014, assert that FirstMerit

refused to consummate a settlement agreement between the parties because one of the Defendants, Salgado, is Hispanic. The counterclaims are almost entirely premised on an allegation that an employee of FirstMerit, Dan Stokes, told non-party Joseph Betancourt "We normally don't give loans to Hispanics." *See* (Countercl. ¶ 9). As described below, Salgado and his counsel knew this allegation was not truthful. When it came time to prove their allegation at trial, they voluntarily withdrew it with prejudice.

Rule 11 required Salgado and counsel to investigate the factual and legal basis of Defendants' claims before filing the counterclaims. Instead of conducting a factual investigation, Salgado and counsel deliberately ignored information in their possession and filed the claims solely to harass FirstMerit in a public federal forum—using one of the most damaging accusations that can be made against a lending institution—in order to delay the foreclosure proceedings. Salgado and counsel knew the counterclaims were based on a false allegation because counsel *personally* participated in the settlement negotiations between the parties, and the parties' settlement communications make it clear that settlement was not reached because the parties could not agree on terms. Plainly, Salgado and counsel did not conduct the diligence that Rule 11 requires before filing the counterclaims. Moreover, Salgado and counsel's post-filing conduct make it clear that the counterclaims were filed without a legitimate purpose and solely to extend this litigation. Despite a reasonable opportunity to do so, Salgado and counsel made no effort to investigate their allegation, conduct any discovery, or otherwise attempt to develop evidentiary support for their claims. When they were unable to use their bad faith claims to extort a settlement out of FirstMerit, they simply withdrew the counterclaims with prejudice on the day of trial moments before opening statements were set to begin.

CHI1:1004697/00018:2133820v3

FirstMerit has followed the pre-filing service requirements of Rule 11, and has otherwise tried to resolve this matter without resorting to further motion practice. Unfortunately, Defendants' counsel refused to withdraw the counterclaims—advocating on behalf of the claims up until the day of trial.

FirstMerit should not have been required to incur the significant expense of litigating the claims and preparing for trial, given that Salgado and counsel had personal knowledge that a settlement agreement was never reached and had no intention of pursuing the claims. FirstMerit therefore files this motion seeking sanctions to recover the costs and fees it has incurred in defending against Defendants' false allegations.

## LEGAL STANDARD

### I. RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Rule 11 mandates that an attorney signing a pleading represents that he or she has a good faith basis to make the allegations contained in that pleading, and that the good faith belief in the accuracy of the allegations was "formed after an inquiry reasonable under the circumstances." An attorney submitting such a pleading must certify that, to the best of his or her knowledge:

(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

CHI1:1004697/00018:2133820v3

FED. R. CIV. P. 11(a)-(b).

In the Seventh Circuit, "the test under Rule 11 is objective: litigation must be grounded in an objectively reasonable view of the facts and the law, and, if it is not, the lawyer or party proceeding recklessly must foot the bill." *In re Ronco, Inc.*, 838 F.2d 212, 217 (7th Cir. 1988). Thus, Rule 11 requires that an attorney must make a reasonable inquiry into the factual and legal basis for the claims the attorney asserts, and the failure to make such an inquiry justifies the imposition of Rule 11 sanctions. *Id*. *See also In re Excello Press, Inc.*, 967 F.2d 1109, 1112 (7th Cir. 1992) (counsel must perform "an adequate inquiry into the facts and the law before he file[s] the claim.").

If a court determines that Rule 11 has been violated, the court can impose any sanction that "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED. R. CIV. P. 11(c)(4). Indeed, Rule 11 sanctions are designed to enable courts to discourage laggard or abusive tactics and lessen frivolous claims and defenses. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) ("It is now clear that the central purpose of Rule 11 is to deter baseless filings in district court and thus…streamline the administration and procedure of the federal courts."). Consequently, Rule 11 authorizes sanctions ranging from payment to the party moving for sanctions of "reasonable expenses, including attorney's fees, incurred for the motion" to "an order directing payment to the movant of part of all of the reasonable attorney's fees and other expenses directly resulting from the violation." FED. R. CIV. P. 11(c)(2), (4).

II. **THE COURT'S INHERENT AUTHORITY TO SANCTION ATTORNEYS FOR IMPROPER CONDUCT AND VIOLATIONS OF RULES OF PROFESSIONAL CONDUCT.**

This Court also has the inherent power and authority to impose sanctions if it finds that an attorney acted "in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). Rule 11 permits a district court to impose sanctions on

CHI1:1004697/00018:2133820v3

litigants who present pleadings to the court for any improper purpose, and a judge can sanction a litigant for filing a frivolous suit or claim regardless of the motives for such filing. *Vollmer v. Selden*, 350 F.3d 656, 659 (7th Cir. 2003) *citing Reed v. The Great Lakes Co., Inc.*, 330 F.3d 931, 936 (7th Cir. 2003).

## ARGUMENT

The filing of the counterclaims warrants sanctions because Salgado and counsel failed to conduct a reasonable inquiry as to whether the claim was well grounded in fact. FED. R. CIV. P. 11(b); *In re Ronco, Inc.*, 838 F.2d at 217. As discussed in FirstMerit's motion to dismiss and motion for summary judgment, Defendants' claims are based on their conclusion that FirstMerit refused to execute a settlement agreement because one of the Defendants is Hispanic. (Dkt. No. 41 Countercl. ¶¶ 14-17, 23-25). The sole factual allegation upon which Defendants' base their conclusion is that a FirstMerit employee purportedly made the inflammatory comment in April of 2012. (*Id.* at ¶ 9). Aside from the fact that the alleged comment is a complete fabrication, the claims are implausible because there was never a settlement agreement reached between Defendants and FirstMerit. (Dkt. No. 87 Memo and Opinion Order). Salgado and counsel were aware that a settlement had not been reached because Defendants' counsel Michael Pomerantz partook in the subject settlement discussions with FirstMerit's counsel and was well aware not only that no settlement had been reached, but also why it had not been reached. Defendants' counsel was in possession of explicit emails between himself and FirstMerit's counsel detailing the parties' inability to reach an agreement. (*Id.*). The reasons the settlement discussions failed were, among others, (i) a difference as to the amount of the proposed settlement payment and (ii) the Defendants' refusal to participate in a debtor's examination prior to execution of the proposed agreement. This Court has already observed that Defendants' counsel's failure to

disclose these emails was "disquieting." (*Id.*). More than that, Salgado and counsel's decision to disregard those emails is the exact type of behavior that is sanctionable under Rule 11. *Schaffer v. Chicago Police Officers*, 120 F.R.D. 514, 515-16 (N.D. Ill. 1988) (where an attorney signs a pleading that is not "grounded in objectively reasonable view of the facts" a court "***must*** assess sanctions under Rule 11") (emphasis added).

Moreover, it is also apparent that Salgado and counsel filed the counterclaims without conducting a reasonable investigation and solely to extend this litigation because they conducted absolutely zero discovery and otherwise made no effort to prove their claims. They did not request institutional information regarding the ethnicities of FirstMerit's borrowers, they did not notice a deposition of a FirstMerit corporate representative, nor did they seek any evidence whatsoever that would be required to establish the counterclaims asserted.

The assertion that a settlement agreement had been reached is so patently false that at best it could be interpreted as a failure of Salgado and counsel to conduct a reasonable inquiry into the relevant facts before filing the counterclaims, but in actuality it was a blatant attempt by Salgado and counsel to mislead the Court and coerce FirstMerit into settling its foreclosure claim.

Salgado and Counsel should not be permitted to abuse the judicial system in this manner. The system and its finite resources should be reserved for the resolution of legitimate disputes brought in good faith, by attorneys who have carefully vetted their allegations and believe in good faith that the law supports their claims. By filing the counterclaim, Salgado and counsel violated Rule 11 of the Federal Rules of Civil Procedure. Salgado and counsel should be sanctioned accordingly, both for their conduct in this matter and to deter such conduct in the future.

Further, the allegations in the counterclaim are premised on the fabricated comment associated with a FirstMerit employee, which was presumably made up by Joseph Betancourt. However, the fact that Salgado and counsel apparently took Betancourt at his word should not prevent the entry of sanctions here. An attorney is allowed to rely on his "client's statements when it is reasonable to do so," but if "a client's statements could be readily corroborated or investigated but the attorney fails to do so, this conduct could be sanctionable." *Apostol v. Landa*u, No. 86 C 8070, 1994 WL 110172, at *2 (N.D. Ill. Mar. 29, 1994). Here, Defendants' claims are entirely premised on Betancourt's allegation about what a FirstMerit employee purportedly said to him. However, since the Forbearance Agreement was executed in June 2012 and the comments to Betancourt allegedly occurred in April 2012, Salgado and counsel knew, when they filed the counterclaims, that FirstMerit had in fact extended Defendants' credit facilities in a written forbearance agreement—that FirstMerit had entered into credit agreements without regard to ethnicity. Moreover, Salgado and counsel knew that FirstMerit had expended considerable time and money that it would never recoup in trying to negotiate a settlement with Defendants. Such a course of conduct, which ultimately resulted in a settlement offer that the Defendants rejected, would be illogical if FirstMerit's ultimate goal was to discriminate against Salgado. Accordingly, Salgado and counsel were required to investigate further into the underlying facts before filing counterclaims alleging that FirstMerit refused to extend credit because one of the Defendants is Hispanic, and their failure to do so is another basis for the entry of sanctions against their firm. *O'Donnell v. University of Chicago*, No. 01 C 5809, 2001 WL 1593141 at *6 (N.D. Ill. Dec. 13, 2001) (litigants and their attorneys must conduct a reasonable investigation of the facts necessary to support their claims before filing them).

7

## CONCLUSION

FirstMerit asks this Court to sanction Defendant Juan Salgado and counsel Michael Pomerantz, Andy Jacobson, Glenn Kanter, Bryan King and their firm Brown, Udell, Pomerantz & Delrahim for initiating and advocating for the counterclaims without a good faith basis and without conducting reasonable inquiry into the law and facts. Pursuant to the Federal Rules of Civil Procedure 11(c), this Court's local rules, and this Court's inherent authority to sanction attorneys and parties who act in bad faith, willfully abuse the judicial process, or file frivolous papers, FirstMerit respectfully requests that this Court award FirstMerit their reasonable expenses, including attorneys' fees and costs, incurred in defending the frivolous counterclaims and bringing the present Motion[1], and impose an additional monetary sanction sufficient to deter repetition and continuation of Defendants' counsel's improper conduct in this matter as well as comparable conduct by others.

FIRSTMERIT BANK, N.A. a national banking association, as successor in interest to the FDIC, as receiver for Midwest Bank and Trust Company,

By: _____
One of Its Attorneys

David F. Standa
dstanda@lockelord.com
**LOCKE LORD LLP**
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700

---

[1] FirstMerit will file a fee petition detailing these fees and costs concurrently with this motion.

CHI1:1004697/00018:2133820v3

## **CERTIFICATE OF SERVICE**

      I, David F. Standa, an attorney, certify that I caused the foregoing Motion for Sanctions to be served upon all persons and entities authorized and registered to receive such service through the Court's Case Management/Electronic Case Files (CM/ECF) system on November 6, 2015.

                                                    /s/David F. Standa

CHI1:1004697/00018:2133820v3